**McCOY CANNED FOOD COMPANY v**

**CINCINNATI, SANDUSKY & CLEVELAND**

**RAILROAD CO**

Ohio Appeals, 2nd Dist, Champaign Co

No. 84.   Decided March 26, 1931

B. F. Miller, Columbus, G. V. Frome, and Deaton & Bodey, Urbana, for McCoy Canned Food Co.

C. P. Stewart, Springfield, and H. W. Houston, Urbana, for Cincinnati, Sandusky & Cleveland Railroad Co.

**HORNBECK, J.**

The first proposition urged in plaintiff's brief is that the court erred in refusing to give plaintiff's special charge No. 1 to the jury before argument. The charge reads:

"The court charges the jury that the deed from John H. James to the Mad River and Lake Erie Railroad conveyed the land for a right-of-way without fixed and definite limits, and said limits became fixed and definite when said railroad was constructed and finished; and such practical location and use of such right-of-way by the grantee, acquiesced in by the grantor, would have the same legal effect as if the lands so used and occupied had been fully described by the terms of the deed, and it is for the jury to determine from the evidence the limits of said right-of-way as so fixed."

If this is a sound exposition of the law of the case, the court was required to give it, and failure to do so is prejudicial error which we cannot ignore, although we be of opinion that it had no such prejudicial effect on the verdict.

**Village of Monroeville v Root, 50 Oh St 523.**

**Payne v Vance, 102 Oh St 59.**

**The Cincinnati Traction Company v Kroger, 114 Oh St 303.**

The majority of the court is of the opinion that the trial judge was justified in refusing to give this charge as tendered. The minority believes that the charge should have been given.

The issues of fact in this case were clearly drawn. It is claimed by the plaintiff that by the terms of the deed from John H. James to the Mad River and Lake Erie Railroad Company of date Sept. 1, 1847, the Railroad Company took a piece of land as and for a right-of-way through the lands of James; that by deed from Dutton, and predecessors in title, the western boundary line of plaintiff's property was described as the east line of the Cleveland, Cincinnati,

Chicago & St. Louis Ry. Co., defendant's lessee; that specific description of the right-of-way, to which reference was made in the instrument of September, 1847, having not been found, and the plat thereof also being lost, the limits of the right-of-way were to be determined by the jury saying from the evidence what width was actually needed by the railroad company for such right-of-way when the railroad was finished. That such determination would fix the eastern line of said right-of-way and establish plaintiff's line.

Three possible means of determining the width and area of the right-of-way of the railroad company along the line in controversy are set forth in the deed of Sept. 1, 1847.

1. The width actually needed (for right-of-way) when the railway should be finished.

2. A survey made by the company's engineers prior to the date of the deed.

3. A plat of this survey in existence when the deed was made.

It is not definite that Nos. 2 and 3, if available, would show the right-of-way, as they only refer specifically to the location and course of the road, which probably would, but might not, include the width of the right-of-way. Therefore, No. 1 is the only means appearing in the deed and now available by which the right-of-way can be fixed. When and if the width actually needed for the railway for its right-of-way at and along the line in controversy could be determined from the evidence, then the respective lines of the railway company and plaintiff, as fixed by their instruments of title, become definite. The fact that these lines have not heretofore been definitely located and described by metes and bounds does not change the presumption that must attend that they were capable of determination when the railway was finished.

To support the claim of plaintiff many witnesses were offered who testified that the railroad company had for many years, beginning as early as 1884 and extending into the eighties, maintained fences on both sides of the right-of-way, adjoining the property of plaintiff, at a distance of from seventeen to twenty feet apart, and that the fence on the east was from six to eight feet from the eastern rail of the main track of defendant company. This testimony tended to establish the width of the right-of-way of defendant company as defined in the James deed, and the western boundary

line of plaintiff's property.

Upon this claim of the plaintiff and the evidence the writer of this opinion believes that this charge should have been given, because it incorporates, substantially, the method of determining the area and dimension of the land included within the right-of-way as fixed by the parties to the instrument of May, 1847, which determination was to be made when the railroad was constructed and finished. If and when the jury found from the evidence these limits fixed by the railroad company, as provided in the early part of the charge, then the remaining portion of the charge became effective and applicable.

The fact that the jury may have later found from the evidence that defendant had established a prescriptive right to the land in controversy would not have affected the right of the plaintiff to have the jury pass upon the question whether or not the right-of-way fixed by the test set up in the deed from James to the railway company included a lesser amount of land than the railway company was at the time of the trial claiming to own.

The next claim is that the court erred in its general charge, on the same subject matter covered in the special charge, in the use of the following language:

1. "In the deed of conveyance it specified that the Railroad Company was to have a right-of-way through the farm of James to such width as was necessary. It was not described by metes and bounds and so far as the deed was concerned, you could not tell where it was located or how wide the strip was being conveyed. The deed only says a right-of-way through the farm of such width as was necessary."

And at page 750:

2. "Now, with that indefinite description the parties themselves, that is, James and the Railroad Company, might have definitely determined subsequently as to where the line should be, or they might never have determined where the line should be. Under such circumstances the question of adverse possession might be the only controlling factor in determining where the lines should be. Under such an uncertain description the parties might meet and agree where the lines should be, but there is no evidence of such an agreement."

We think there is no prejudicial error in the language employed by the trial judge as heretofore quoted. It is true he did not use the express language in the instrument from James to the Railroad Company, but what he said was not misleading. It is probable that the jury in view of the clear and distinct issue drawn on the subject matter objected to in the charge was not disturbed in its appreciation of the questions of fact for its determination.

Nor do we feel that there was prejudicial error, (though inexact because no variance in the deeds,) in that part of the general charge wherein the court indicated that the undisputed evidence disclosed that the claim of the title of the defendant Railroad Company was prior to the claim of title of the predecessor of the plaintiff company.

Objection is also made to the testimony of certain witnesses for the defendant who, as experts, indicated what factors entered into the width of the right-of-way that the railroad acquired under the deed from James to the railroad. We have examined this testimony and feel that it was competent and properly within the realm of expert testimony. The witnesses qualified; they stated they had studied the history of railroad construction generally and with special reference to the Big Four Railroad and its predecessors; they were practical men in the field. With this basis it was proper for them to indicate what would be contemplated as a right-of-way of the railroad company in 1847 at and along the line in dispute. Inasmuch as the definite limits of this right-of-way, as fixed by James and the railroad company were not available, any probative evidence tending to prove what in all probability was the width of the right-of-way as contemplated by them was under the language of the James deed competent and relevant in addition to the fence testimony, of which there was much. The subject matter was a proper field for expert testimony.

Another ground of error relates to the general charge of the court as follows:

"Now if the railroad company has been in actual, continuous and exclusive possession of that tract of land for more than twenty one years under claim of title, then they have title, whether or not the deed as originally granted, and whether or not the lines that they originally took conform to the lines which now exist. In other words, a person might acquire title to property without having any deed for it at all, provided they have the actual, notorious, continuous and exclusive possession of it for a period of twenty one years."

Consideration of the quoted part and the

whole charge on the subject does not establish prejudicial error. Although the court in qualifying the elements necessary to ripen possession into title omitted "hostile" or "adverse," in four places it stated the equivalent, viz: that the possession should be held "under a claim of title" or "under the claim that he owned it."

The element of **adverse** possession was vital in the instant case because the railroad company may have used some of the land claimed by plaintiff for railroad purposes only without intention of asserting title to the real estate. Therefore plaintiff's special charge No. 3, requested before argument, in the opinion of the minority, was proper and places emphasis upon the fact that the defendant could not maintain prescriptive ownership of the real estate in controversy if it or its predecessor in title occupied the land by and with the consent of the owner.

Objection is made to the Shook deposition. Without extended discussion, we are of the opinion that at least it was properly admitted upon the theory upon which the court accepted it. Nor can we say upon the state of the record that the court erred in refusing to accept the testimony of Mr. Dye wherein it is claimed that it was at variance with the testimony of Mr. Shook.

Defendant's special charge No. 2, to which objection is made, reads:

"One of the issues to be determined by you is the location of the west boundary line of the plaintiff's property and the east boundary line of the defendant's right-of-way at the place in question. The deed under which the plaintiff claims makes its west boundary line the east line of the right-of-way of the C. C. C. & St. L. Railway Company, the defendant's lessee. The burden of proof is upon the plaintiff to prove by a preponderance of the evidence that its west boundary line is where it now claims such line to be and the plaintiff must establish by a preponderance of the evidence its right and title to the property to that line independently of any weakness of the defendant's title."

Here again the members of the court differ on the correctness of this charge. The majority think it sound. The minority is of opinion that it was prejudicial to the plaintiff, because it prevents the plaintiff recovering though its evidence may establish that some part of the land claimed by it was being wrongfully appropriated by the defendant, although the proof did not establish that plaintiff's line was exactly where claimed. In our judgment there was no prejudicial error in the discussion by the court in its general charge of the 1904 contract, and in failing to consider it in conjunction with the contract of 1922. In any event, inasmuch as counsel for plaintiff did not call the court's attention to their desire to have a construction of the contract of 1922 presented to the jury in conjunction with the contract of 1904, it would not be reached by the special exception noted to the charge.

We believe that we have discussed in a general way substantially all the propositions urged by counsel for plaintiff in error. As indicated, the majority of the court is of opinion that no error intervened prejudicial to the plaintiff in error requiring a reversal of the judgment. The minority is of opinion that there was error in the particulars herein indicated prejudicial to plaintiff in error. The judgment of the trial court will therefore be affirmed.

ALLREAD, PJ, KUNKLE, J, concur in affirming the judgment.
HORNBECK, J, dissents.